## Dembinski v. PennDOT

*Robert M. Rosenblum,* for petitioner.
*Frank M. O'Neill,* for respondent.

O'BRIEN, *J.,* May 17, 1993 —

### FINDINGS OF FACT

(1) On January 4, 1993, shortly past midnight, a Tobyhanna Township police officer observed the petitioner operating his motor vehicle in an erratic manner on Pennsylvania Route 940 in Tobyhanna Township, Monroe County, Pa.

(2) When the officer stopped the petitioner's vehicle, he detected a strong odor of alcohol on petitioner's breath and observed that the petitioner's eyes were glassy and his speech slurred. When the petitioner failed in attempting to perform three field sobriety tests, the officer placed him under arrest and drove him to Pocono Medical Center for a blood test.

(3) After the officer advised the petitioner of the provisions of the Implied Consent Law, the petitioner agreed to submit to a blood test. A blood technician was summoned who made several invasive attempts of petitioner's arm to secure a blood sample. The blood technician advised the officer and petitioner that he was unable to obtain a blood sample and left the scene.

(4) The officer then asked the petitioner to supply a urine sample. The petitioner responded that he was unable to do so at that time. The officer advised petitioner that he could not wait any further with respect to the urine sample and would report a refusal by the petitioner.

## DISCUSSION

The Pennsylvania Motor Vehicle Code provides in pertinent part as follows:

"(a) *General rule* — Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

"(1) while under the influence of alcohol or a controlled substance or both; or

"(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

"(b) *Suspension for refusal* —

"(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

"(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

"(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons." 75 Pa.C.S. §1547.

In *PennDOT v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987), our Supreme Court held that obtaining a blood, urine or breath sample for purposes of determining whether an individual is driving under the influence of alcohol is a search and seizure within the meaning of our state and federal constitutions. The court further held that if more than one of the foregoing enumerated tests is requested, the police officer must offer sufficient evidence to establish the reasonableness of such a request or the request will be held to be unreasonable in violation of Article 1, section 8 of the Pennsylvania Constitution.

In the case at bar, it is undisputed that the petitioner submitted to the invasive attempt to secure a blood sample.

Although both the police officer and the petitioner speculated as to the reasons such attempts were unsuccessful, the Commonwealth did not produce the blood technician to provide any reasonable explanation for this failure. The officer's contention that the petitioner's arms did not have available veins because of prior drug use, fails to explain why blood was not extracted from some other part of the petitioner's body. Indeed it is common knowledge that a pinprick of a finger can produce blood for various medical purposes. Therefore, we conclude that the Commonwealth has failed to establish the criteria set forth by our Supreme Court for requesting a second test. Finally we find credible petitioner's testimony that he was unable to provide a urine sample at the time requested by the officer. Further we conclude that the officer did not wait a sufficiently reasonable period of time to afford the petitioner the opportunity to provide such a urine sample.

## CONCLUSIONS OF LAW

(1) The officer had reasonable grounds to believe that the petitioner was operating a motor vehicle while under the influence of alcohol.

(2) When the officer placed the petitioner under arrest, he properly advised him of the Implied Consent Law including the provision that his operating privileges would be suspended for a period of one year if he refused to submit to a chemical test.

(3) The petitioner did submit to an invasive procedure to provide a blood sample for a chemical test and the failure of such procedure was not due to any fault on the part of the petitioner. The Commonwealth has failed to provide competent evidence as to the reason this invasive procedure failed.

(4) The Commonwealth has failed to present sufficient evidence to establish reasonableness of the subsequent request for urine test and, therefore, such request would be in violation of our state constitution.

### ORDER

And now, May 17, 1993, the order of the Department of Transportation dated January 22, 1993, suspending driving privileges of Thomas W. Dembinski for a period of one year for refusal to submit to a chemical test is reversed.