535 A.2d 296

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* Robert A. Penich, Jr., Appellee.

Argued October 5, 1987, before Judges CRAIG, DOYLE and BARRY, sitting as a panel of three.

*Harold H. Cramer,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Morey Myers,* General Counsel, for appellant.

*Vincent C. Murovich, Murovich, Peirce, Stump and Knorr,* for appellee.

OPINION BY JUDGE DOYLE, January 5, 1988:

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of Westmoreland County sustaining the appeal of Robert A. Penich, Jr. (Licensee) to the Department's one-year suspension of his driver's license.

While the facts in this case are uncontroverted, the legal issues to be resolved require us to interpret the recent decision of our Supreme Court in *Department of Transportation v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987). The *McFarren* Court held that, if more than one chemical test is requested by a police officer, "the police officer must offer sufficient evidence to establish the 'reasonableness' of such a request." *Id.* at 418, 525 A.2d at 1188.[1]

In the case now presented, it was stipulated before the trial court that the arresting officer had reasonable grounds to believe Licensee was driving under the influence; that he placed Licensee under arrest; and that Licensee was asked to submit to a breathalyzer test. As required by a Department regulation,[2] two breath tests

[1] We recognize that *McFarren* was a plurality decision of the Supreme Court, with two justices joining the opinion of Justice ZAPPALA, two justices concurring in the result, and two justices dissenting. In *McFarren,* the events of which occurred prior to the adoption of 67 Pa. Code §77.24(b)(1), *see infra* n. 2, a licensee was arrested for driving under the influence and consented to take a breathalyzer test. After it was successfully performed, the police officers requested the licensee to submit to a second breathalyzer test, which he refused to do. Thereupon, the licensee's driver's license was suspended. The Supreme Court reversed the suspension, holding that the request that the licensee submit to a second test was not reasonable.

[2] *See* 67 Pa. Code §77.24(b)(1). This regulation, which took effect December 22, 1984, provides that, when a chemical test of breath is given, the test *must* be performed twice. As this regula-

were administered to Licensee: the first test produced a reading of 0.10%, and the second a reading of 0.09%.[3] The police officer then requested that Licensee submit to a chemical test of his blood. Licensee refused to submit to this test on the ground that the two breath tests satisfied the implied consent provisions of Section 1547(a) of the Vehicle Code (Code).[4]

Upon receiving notification of Licensee's refusal to take the blood test, the Department suspended his driver's license for one year pursuant to Section 1547(b) of the Code, 75 Pa. C. S. §1547(b). The common pleas court reversed the suspension, holding that Licensee satisfied the requirements of Section 1547(a) by submitting to the two breath tests. The Department appeals to this Court.

---

tion was promulgated subsequent to the events in *McFarren,* the Supreme Court explicitly excluded it from consideration in that opinion. *McFarren,* 514 Pa. at 415 n. 1, 525 A.2d at 1187 n. 1.

[3] We take particular note here of the trial judge's reference (slip op. at 2) to the practice of certain police departments requesting drivers to take the breathalyzer test four or five times. No doubt, this regulation will have the effect of curbing the conception by some that police officers have unbridled authority to request any number of tests. Furthermore, because only the *lower* of the two test results may be used in the subsequent prosecution, 67 Pa. Code §77.24(b)(2), the requirement of a second test, if lower, will give the benefit to the borderline motorist. *See infra* n. 6.

[4] 75 Pa. C. S. §1547(a). This Section provides in relevant part: (a) *General rule.*—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purposes of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both. . . .

As we read *McFarren,* a police officer with reasonable grounds to believe a licensee was operating a vehicle while under the influence[5] initially has unfettered discretion under Section 1547(a) to request the licensee to submit to *one* of the following types of chemical tests: breath, blood, or urine. Once the police officer selects the *type* of test to be administered, however, his or her discretion is curbed. If a breath test is chosen, the police officer must administer it twice.[6] If a blood or urine test is chosen, it may only be administered once unless the police officer establishes a reasonable ground for requesting a second test. For example, "[a] second test may be proper if the first test was inconclusive due to faulty equipment or faulty performance by the individual." *McFarren,* 514 Pa. at 417, 525 A.2d at 1188. Likewise, *McFarren* also requires a reasonable reason whenever a police officer requests a licensee to submit to a different *type* of chemical test other than the one originally chosen and administered, regardless of the number of times the inital type of test is permissibly given. Reasonability, of course, is a question of law for the court to decide based upon the unique facts in each case. *Cf. Department of Transportation, Bureau of Traffic Safety v. Dreisbach,* 26 Pa. Commonwealth Ct. 201, 363 A.2d 870 (1976).

In the present case, the police officer asked Licensee to submit to a blood test after he had completed two

[5] It is well-established that a police officer ·needs only reasonable grounds to believe a person was driving under the influence, not probable cause, in order to initially request a licensee to submit to a chemical test under Section 1547 of the Code. *See, e.g., Department of Transportation, Bureau of Traffic Safety v. Turner,* 100 Pa. Commonwealth Ct. 539, 544 n. 2, 515 A.2d 96, 98 n. 2 (1986). *See also Glass v. Department of Transportation, Bureau of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975).

[6] 67 Pa. Code §77.24(b)(1). *See supra* n. 2.

successful breath tests. The result of the second breath test, the only result admissible under 67 Pa. Code §77.24(b)(2), showed a reading of 0.09%. This would have meant, at this point, that the *only* chemical test that would have been properly admissible at Licensee's subsequent trial on the Code violation would allow for *no* presumption.[7] 75 Pa. C. S. §1547(d)(2). The officer testified, however, that he felt the breathalyzer readings were inaccurately low because of the behavior of Licensee and because he found a bottle of what appeared to be *prescription* medication tablets on Licensee's person.[8]

We believe that as a matter of law this is insufficient evidence to establish the reasonableness of requesting Licensee to submit to a different test. The record is devoid of any testimony of the police officer indicating the specific type of behavior on the part of Licensee that led to the police officer's suspicion. Furthermore, there is

---

[7] In Pennsylvania, a chemical test showing that the amount of alcohol by weight in a person's blood is 0.10% or more can give rise to a permissible inference of a violation of Section 3731(a)(4) of the Vehicle Code, 75 Pa. C. S. §3731(a)(4). *Commonwealth v. Hernandez,* 339 Pa. Superior Ct. 32, 488 A.2d 293 (1985); 75 Pa. C. S. §1547(d)(3).

[8] The police officer testified as follows:

I administered the breathalyzer test . . . I gave the two tests which were required by law. The first test the reading was .10, and the second test came out as .09. Because of the condition of the actor, I felt that these readings were not justified for his actions. He was—being very drunk and/or under the influence of something. Also, upon—I had confiscated upon his arrest a bottle containing some tablets, and those tablets were unknown to me at that time as to what they were. *They appeared to be a prescription form.* I felt at this time because of the low readings, I had asked him that it would be necessary to complete this testing by taking a chemical testing by asking for blood.
(Emphasis added).

no testimony indicating that the officer suspected that the tablets found on Licensee's person were *controlled substances,* but merely a prescription drug. Rather, it appears that the police officer, having failed through the two breath tests to acquire enough evidence to raise an inference of Licensee's driving in violation of Section 3731(a)(4) of the Code,[9] was seeking to "enhance the evidence and guarantee a conviction," precisely the sort of conduct proscribed by our Supreme Court. *McFarren,* 514 Pa. at 418, 525 A.2d at 1188. For this reason, suspension of Licensee's operating privileges was improper.

Affirmed.

### Order

The order of the Court of Common Pleas of Westmoreland County in the above-captioned matter is affirmed.

---

[9] 75 Pa. C. S. §3731(a)(4). This Section provides:

(a) *Offense Defined.*—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

. . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.