IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kalan W. Jones                              :
                                            :
              v.                            :    No. 837 C.D. 2020
                                            :    Submitted: July 9, 2021
Commonwealth of Pennsylvania,               :
Department of Transportation,               :
Bureau of Driver Licensing,                 :
                      Appellant             :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: October 19, 2021

          The Commonwealth of Pennsylvania, Department of Transportation,
Bureau of Driver Licensing (PennDOT), appeals an order of the Court of Common
Pleas of Allegheny County (trial court) that sustained the appeal of Kalan W. Jones
(Licensee) from PennDOT's one-year suspension of his operating privilege imposed
under Section 1547(b)(1)(i) of the Vehicle Code, commonly referred to as the
Implied Consent Law.[1]  We reverse.

---

[1] Section 1547(b)(1)(i) provides, in pertinent part:

>     (1) If any person placed under arrest for a violation of section 3802 [(relating to
>     driving under the influence of alcohol or a controlled substance)] is requested to
>     submit to chemical testing and refuses to do so, the testing shall not be conducted
>     but upon notice by the police officer, the department shall suspend the operating
>     privilege of the person as follows:
>
>          (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

On June 24, 2018, University of Pittsburgh Police Officer Donald Chichilla watched a vehicle driven by Licensee cross over the center lines of the roadway several times and run a red light. Officer Chichilla initiated a traffic stop. After Licensee failed to park his vehicle in a parking lane, Officer Chichilla asked Licensee to stop the ignition and exit the vehicle.

Officer Chichilla smelled alcohol and burnt marijuana emanating from Licensee, and observed that Licensee's eyes were glassy. Licensee stated that he had consumed alcohol but not smoked marijuana. Officer Chichilla administered three field sobriety tests, which Licensee failed. Officer Chichilla arrested Licensee for driving under the influence (DUI) of alcohol or a controlled substance and transported him to the University of Pittsburgh police station for a breathalyzer test. Licensee was placed in a holding cell for 30 minutes. As Officer Chichilla escorted Licensee to the breathalyzer test, a baggie of marijuana fell from Licensee's pants onto the floor of the holding cell.

Licensee passed the breathalyzer test. Officer Chichilla then requested Sergeant Charles Welsh to administer a blood test. Sergeant Welsh questioned Licensee, who again denied that he had smoked illegal substances that day. Sergeant Welsh then read to Licensee the Department Form DL-26B and requested him to submit to chemical testing. Licensee refused.

PennDOT subsequently suspended Licensee's operating privilege for one year for refusing a police officer's request to submit to chemical testing pursuant to 75 Pa. C.S. §1547(b)(1)(i). Licensee appealed.

On July 23, 2020, the trial court held a *de novo* hearing, at which Officer Chichilla testified to the facts described above. When asked why he believed that

Licensee was impaired despite his successful completion of the breathalyzer test, Officer Chichilla testified:

> [Counsel]: And what happened … after he completed the breath test on the breath testing instrument?
>
> [Officer Chichilla]: Well, for me personally it wasn't matching up. [The] indicators from him, the initial stop from the intersection of him almost hitting someone [by going] through the red light to my initial interaction, the field sobriety tests, something was not adding up. And then his denial of using marijuana at all. And then the baggy of marijuana falling from his person.
>
> So per the breath test, which was a .059 or a .056, something still wasn't – his level of impairment did not match the level on the [i]ntoxilyzer.
>
> [Counsel]: Moreover, you detected this odor of burnt marijuana from his person on the scene?
>
> [Officer Chichilla]: Yes.

Notes of Testimony (N.T.), 7/23/2020, at 16; Reproduced Record at 32a (R.R.__).

Officer Chichilla acknowledged that he searched Licensee before placing him in the holding cell and did not "discover anything on his person." N.T. 24; R.R. 40a. However, Licensee was the only person in the holding cell. While escorting Licensee to the breathalyzer test, Officer Chichilla saw the baggie of marijuana "dropping out of the bottom of [Licensee's] pant[] leg," which was also captured on the security video. N.T. 24-25; R.R. 40a-41a.

Licensee then testified. He denied that he was read Form DL-26B or any "blood testing warnings" before he was asked to take the blood test; all he was told was "[i]n the State of Pennsylvania[,] you can refuse a blood test or you can take it. It's your right to refuse it." N.T. 34; R.R. 50a. Licensee refused to take the

3

blood test because he had passed the breathalyzer test and believed he was free to leave.

At the end of the hearing, the trial court sustained Licensee's appeal. The trial court found Officer Chichilla credible. Nevertheless, it reasoned as follows:

> I can see where the confusion would rest with [Licensee]. He took a test. The reading was low for the blood alcohol…. [L]ike I said earlier, I'm not casting any judgment as far as Officer Chichilla not being credible. But, nevertheless … [Licensee] took one test, and then a second test is offered. I don't believe the second test would have been offered if the video wouldn't have shown the marijuana being dropped. So I am going to sustain [Licensee's appeal].

N.T. 44-45; R.R. 60a-61a.

PennDOT appealed to this Court. In its PA. R.A.P. 1925(a) opinion, the trial court explained that Officer Chichilla lacked reasonable grounds to believe that Licensee had operated his motor vehicle while under the influence of marijuana. The baggie of marijuana that fell out of Licensee's pants did not constitute "a reasonable reason for the request to take a blood test." Trial Court 1925(a) Op. at 2. The trial court construed Section 1547(a) of the Vehicle Code to mean that a police officer can request a licensee to submit to only one type of chemical testing. *Id.* at 3 (citing 75 Pa. C.S. §1547(a) (a licensee "shall be deemed to have given consent to one or more chemical tests of breath *or* blood…") (emphasis added)). Licensee passed the breathalyzer test because it yielded a blood alcohol content of 0.056% or 0.059%, lower than the 0.08% threshold for a violation of driving under the

4

influence of alcohol.[2]   The trial court opined that Officer Chichilla was, thus, precluded from requesting a blood test.

On appeal,[3] PennDOT raises two issues for our review.[4]  First, it argues that the trial court erred in holding that Officer Chichilla lacked reasonable grounds to believe Licensee was operating his vehicle while under the influence of a controlled substance in violation of Section 3802 of the Vehicle Code.  Second, it argues that the trial court erred in holding that Officer Chichilla lacked authority under the Vehicle Code to request that Licensee take a blood test after he successfully completed a breath test.

In support of its first argument, PennDOT contends that the trial court erred and abused its discretion in finding that Officer Chichilla based his request for a blood test solely on his observation of a baggie of marijuana falling from Licensee's pants.  Officer Chichilla credibly testified to Licensee's behavior that prompted his arrest, *i.e.*, his moving violations; his failure to park in a parking lane; the odor of alcohol and burnt marijuana emanating from his person; his glassy eyes;

---

[2] Section 3802(a)(2) of the Vehicle Code provides:

(a) General impairment.--

* * *

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa. C.S. §3802(a)(2).

[3] Our review determines whether the findings of fact were supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion.  *Cole v. Department of Transportation, Bureau of Driver Licensing*, 909 A.2d 900, 902 n.5 (Pa. Cmwlth. 2006).

[4] Licensee did not file a brief in this matter.

and his inability to pass the field sobriety tests. These constituted reasonable grounds for Officer Chichilla to believe that Licensee was operating a vehicle under the influence of alcohol or a controlled substance.

To support the one-year suspension of Licensee's operating privilege under the Implied Consent Law, 75 Pa. C.S. §1547(b)(1)(i), PennDOT must prove that Licensee (1) was arrested for DUI by a police officer who had reasonable grounds to believe that Licensee was operating a vehicle while under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that a refusal would result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999).

Here, there is no question that Licensee was the operator of a vehicle; was asked to submit to a chemical test; refused to consent and was given the required warnings. The only issue is whether Officer Chichilla had reasonable grounds to believe Licensee was operating the vehicle while under the influence of a controlled substance in violation of Section 3802 of the Vehicle Code when he arrested Licensee for DUI. Notably, Section 3802 precludes a licensee from operating a motor vehicle with "any amount" of scheduled controlled substance, or a metabolite thereof, in the licensee's blood. 75 Pa. C.S. §3802(d).[5]

---

[5] It states as follows:

> (d) Controlled substances.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
>> (1) *There is in the individual's blood any amount of a*:
>>
>>> (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

The standard of reasonable grounds to believe an operator of a vehicle is under the influence of alcohol or a controlled substance does not rise to the level of probable cause required for a criminal prosecution. *Banner*, 737 A.2d at 1207. Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time of the arrest, could reasonably believe that the licensee was operating the vehicle while under the influence of alcohol or a controlled substance. *Id.*

Whether reasonable grounds exist for an arrest is a question of law reviewable by the court on a case-by-case basis. *Id.* All of the facts and circumstances, as they appeared at the time of the arrest, must be considered. There is not a set list of behaviors that must be exhibited in order for an officer to have reasonable grounds. *Farnack v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011). Our case law has identified factors that constitute reasonable grounds: staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol. *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). The absence of one or more of these factors does not mean the officer lacks reasonable grounds to believe a motorist has driven while intoxicated.

---

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa C.S. §3802(d) (emphasis added). Because marijuana is a Schedule I controlled substance, Section 104(1)(iv) of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §780-104(1)(iv), the Vehicle Code prohibits an individual from operating a vehicle after consuming *any* amount of marijuana.

7

*Farnack*, 29 A.3d at 48. Further, passing a breath test does not foreclose a finding of reasonable grounds. *Id.* (citing *Matthews v. Commonwealth*, 540 A.2d 349, 351 (Pa. Cmwlth. 1988)).

Here, Officer Chichilla credibly testified that he arrested Licensee on suspicion of driving under the influence of a controlled substance because of Licensee's driving behavior and the odor of alcohol and burnt marijuana emanating from Licensee's person. Viewed in totality, a reasonable person could believe Licensee was operating a vehicle under the influence of marijuana. It was irrelevant that Licensee passed the breathalyzer test, which would not detect the presence of a controlled substance. Accordingly, the trial court erred in concluding that Officer Chichilla lacked reasonable grounds to believe Licensee was operating his vehicle under the influence of a controlled substance.

PennDOT argues, next, that the trial court erred in holding that Officer Chichilla lacked statutory authority to request that Licensee take a blood test after he successfully completed a breath test. Section 1547(a) of the Vehicle Code provides that where an arresting officer has reasonable grounds to make a DUI arrest, he may request multiple chemical tests. It is within the officer's discretion to choose which type of test to administer first. PennDOT Brief at 27 (citing *Department of Transportation, Bureau of Traffic Safety v. Jackson*, 536 A.2d 880, 882 (Pa. Cmwlth. 1988)). PennDOT argues that because Officer Chichilla had reasonable grounds to believe that Licensee was operating his vehicle while under the influence of alcohol or a controlled substance, he could lawfully request a blood test even after Licensee passed the breath test. We agree.

Section 1547(a) of the Vehicle Code provides:

> *Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be*

8

*deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance* if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

75 Pa. C.S. §1547(a) (emphasis added). The trial court interpreted the term "one or more chemical tests of breath or blood" to mean that the police may administer multiple tests, *i.e.*, "chemical tests of both breath and blood." Trial Court 1925(a) Op. at 3. The trial court's interpretation is not supported by case law.

In *Jackson*, 536 A.2d 880, this Court held that Section 1547(a) of the Vehicle Code allows a second type of chemical test if the police officer's request is reasonable and not "simply to substantiate the accuracy of the first test for alcohol."[6] *Id.* at 881-82 (citing *Department of Transportation v. McFarren*, 525 A.2d 1185 (Pa. 1987)). The licensee in *Jackson* was arrested for DUI. The arresting officer testified that he detected both the odor of alcohol and burnt marijuana on the licensee's person. After the licensee completed a breathalyzer test, which registered a positive

---

[6] At the time *Jackson* was decided, Section 1547(a) provided:

General rule.--*Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine* for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both….

*Formerly* 75 Pa. C.S. §1547(a) (emphasis added).

9

reaction for alcohol, the officer requested him to submit to a blood test. The licensee refused, and PennDOT suspended his operating privilege. The trial court sustained the licensee's appeal and ruled that the officer's request for a second chemical test was invalid. The trial court reasoned that if the officer had suspected the licensee was under the influence of both alcohol and drugs, he should have requested a blood or urine test in the first instance, rather than subject the licensee to more than one test. *Jackson*, 536 A.2d at 881. In reversing the trial court, this Court opined that a police officer need not

> choose to administer a blood or urine test in the first instance where he suspects the presence of a combination of alcohol and a controlled substance. To do so would more than likely result in increased use by the police of the more intrusive types of chemical testing in the first instance. As we stated in [*Department of Transportation, Bureau of Driver Licensing v. Penich*, 535 A.2d 296 (Pa. Cmwlth. 1988)], the police officer *may use his discretion in choosing which type of test to administer first. Once having done so, he must establish reasonable grounds for requesting a second type of test.* We have concluded that such reasonable grounds were present in the instant case.

*Id*. at 882 (emphasis added).

By contrast, in *Department of Transportation, Bureau of Driver Licensing v. Patton*, 633 A.2d 234 (Pa. Cmwlth. 1993), this Court held that a police officer may not ask a licensee to submit to a urine test after he has submitted to a blood test, absent competent evidence that the urine test was necessary. That the urine test was "better" for purposes of detecting the presence of controlled substances in the licensee's system did not establish the reasonableness of the request. *Id.* at 237.

10

Here, Officer Chichilla had "reasonable grounds for requesting a second type of test." *Jackson*, 536 A.2d at 882. Licensee was under the influence of both alcohol and a controlled substance, and Officer Chichilla believed the second test was reasonable because the breath test alone would not have revealed the presence of marijuana in Licensee's system. The blood test was requested to determine whether Licensee was under the influence of a controlled substance. This was authorized under Section 1547(a) of the Vehicle Code. *Jackson*, 536 A.2d at 882. The trial court erred in holding to the contrary.

In summary, the trial court erred in holding that Officer Chichilla lacked reasonable grounds to believe Licensee was operating his vehicle while under the influence of a controlled substance. Officer Chichilla acted within his discretion under Section 1547(a) of the Vehicle Code to request that Licensee submit to a blood test after he completed a breathalyzer test. For these reasons, we reverse the order of the trial court and reinstate PennDOT's one-year suspension of Licensee's operating privilege.

_____
MARY HANNAH LEAVITT, President Judge Emerita

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kalan W. Jones | : | |
| | : | |
| v. | : | No. 837 C.D. 2020 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | |
| Appellant | : | |

# **O R D E R**

AND NOW, this 19th day of October, 2021, the order of the Court of Common Pleas of Allegheny County dated July 23, 2020, in the above-captioned matter, is hereby REVERSED and the one-year suspension of Kalan W. Jones's vehicle operating privilege is REINSTATED.

_____
MARY HANNAH LEAVITT, President Judge Emerita